# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# BRYSON CITY DIVISION
# 2:13cv40

| | |
|---|---|
| **DUKE ENTERGY CAROLINAS, LLC,** | )<br>) |
| **Plaintiff,** | )<br>) |
| v. | )      **ORDER**<br>) |
| **FRONTEIR COMMUNICATIONS OF THE CAROLINAS, LLC,** | )<br>)<br>) |
| **Defendant.** | ) |

Pending before the Court is Defendant's Motion to Transfer [# 23]. Defendant moves to transfer this case to the Eastern District of North Carolina or, in the alternative, stay this case pending a determination by the Federal Communications Commission as to the applicable pole attachment rate Plaintiff may charge Defendant. Upon a review of the record, the parties' briefs, and the relevant legal authority, the Court **GRANTS in part** and **DENIES in part** the motion [# 23].

## I. Background

Plaintiff Duke Energy Carolinas, LLC is an electric utility provider that provides electricity for customers in North Carolina. (Pl.'s Am. Compl. ¶ 6.) Plaintiff's principal place of business is in Mecklenburg County, North Carolina.

(Id. ¶ 1.) As part of its business of providing electricity to consumers, Plaintiff owns utility poles throughout North Carolina. (Id. ¶ 6.)

Defendant Frontier Communications of the Carolinas LLC is an incumbent local exchange carrier ("ILEC") that provides telephone and other services to customers in North Carolina. (Id. ¶ 7.) Defendant is a Delaware corporation with its principal place of business in Connecticut. (Id. ¶ 2.) As part of its business of providing telephone services to customers, Defendant also owns utility poles. (Id. ¶ 7.)

In 1979, the two parties entered into an agreement (the "Joint Use Agreement") to allow each party to use the other party's utility poles to distribute their services to customers in Clay, Cherokee, Graham, Jackson, Macon, and Swain counties in North Carolina. (Id. ¶¶ 9-11.) Pursuant to the terms of the Joint Use Agreement, the party using the other party's utility pole would pay an annual rental fee, as set forth in the agreement, per pole occupied. (Id. ¶¶ 13-15.) The rate for 2011 was $18.40. (Id. ¶ 15.)

On April 7, 2011, however, the FCC adopted an order revising its pole attachment rules to limit telecommunication pole rental rates in certain circumstances and establishing a formula for determining pole rental rates. See In the Matter of Implementation of Section 224 of the Act, 26 F.C.C.R. 5240, 2011

WL 1341351 (Apr. 7, 2011).  One of the purposes behind the FCC's Order was to eliminate the disparity between telecommunication and cable rates.  Id. at 5244.

After the FCC issued its order, Defendant notified Plaintiff that it was terminating the Joint Use Agreement effective August 8, 2012.  (Id. ¶ 19.)  Plaintiff accepted Defendant's notice of termination, and the Joint Use Agreement was subsequently terminated.  (Id. ¶ 20.)  Despite the fact that the parties did not enter into a new agreement, the parties continued utilizing each other's utility poles.  (Id. ¶¶ 20-37.)

On November 15, 2012, Plaintiff sent Defendant a schedule of payment for the 2012 pole rentals.  (Id. ¶¶ 23-24.)   Defendant then informed Plaintiff that it was adjusting the pole rental rates set forth in Plaintiff's schedule pursuant to the telecommunications formula as set forth by the FCC.  (Id. ¶ 25.)   Defendant forwarded payment of this reduced rate to Plaintiff.  (Id. ¶ 30.)

Plaintiff then brought this action against Defendant in the Superior Court of Macon County, North Carolina.   The Complaint asserted a claim for breach of contract and a claim for unjust enrichment arising from Defendant's alleged breach of the Joint Use Agreement.[1]   Plaintiff contends that it is owned an additional $801,483.88 for pole rentals because Defendant was not entitled to adjust the pole

---

1    Plaintiff subsequently amended the Complaint to add a similar claim related to the 2013 pole rental fees.  (Pl.'s Am. Compl. at ¶¶ 44-7.)

rental rates downward from the rate set forth in the schedule. (Id. ¶¶ 29-31.)

Meanwhile, Defendant filed a complaint with the FCC challenging the pole rental rates charged by Plaintiff. (Id. ¶ 26; Ex. A to Def.'s Memo in Support of Mot. Transfer.) In addition, two similar actions involving unpaid pole rental fees based on distinct joint use agreements covering other areas of North Carolina are pending in the United States District Court for the Eastern District of North Carolina. See Frontier Commc'ns of the Carolinas, LLC v. Duke Energy Carolinas, LLC, No. 5:13cv00791 (E.D.N.C. filed Nov. 12, 2013); Duke Energy Progress, Inc. v. Frontier Commc'ns of the Carolinas Inc., 5:13cv00617 (E.D.N.C. removed Aug. 26, 2013.) Both cases in the Eastern District of North Carolina are before United States District Judge Louise Wood Flanagan.

Defendant now moves to transfer this case to the Eastern District of North Carolina. In the alternative, Defendant moves the Court to Stay this case pending a determination by the FCC regarding the pole rental rate charged by Plaintiff to Defendant. Finally, Plaintiff moves to strike a supplemental pleading filed by Defendant.

**II.     Analysis**

**A.     Motion to Strike**

After Plaintiff filed its Amended Complaint, Defendant filed a Supplemental

Memorandum in further support of its Motion to Transfer. Subsequently, Plaintiff moved to strike the Supplemental Memorandum or, in the alternative, requested leave to file a response. Although this Court typically allows parties to file supplemental memorandums to present the Court with relevant legal authority decided after the briefing on a matter is closed, it does not generally allow the parties to offer additional legal or factual argument in such memorandums. To the extent that the Court desires additional briefing on an issue, it will enter an Order directing the parties to further brief any issues that the Court feels were not adequately addressed in the briefs. Here, no further briefing is needed by the Court. Moreover, the Supplement Memorandum is largely a rehashing of Defendant's prior briefs, and is not properly before the Court. To the extent that Defendant or Plaintiff wants to present additional legal authority or submit legal pleadings filed in other proceedings after the briefing closes, the parties may certainly do so without leave of Court. The Court, however, will not entertain any legal discussion as to the relevance of said pleadings or legal authority unless the Court first grants the party leave to file a supplemental brief. Accordingly, the Court **GRANTS** the Motion to Strike [# 39] and **STRIKES** the Supplemental Memorandum [# 37].[2] In ruling on the Motion to Transfer, the Court has not

---

2      The Court notes that even had Plaintiff not moved to strike the supplemental pleading,

considered either the Supplemental Memorandum [# 37] or the proposed response of Plaintiff [# 39-1].

B. **The Motion to Transfer**

Defendant moves to transfer this case to the United States District Court for the Eastern District of North Carolina. A district court may transfer any civil action to another district or division in the interest of justice and for the convenience of the parties and witnesses, provided that the action could have been originally filed in that district or division or all the parties consent to the transfer. 28 U.S.C. § 1404(a). Section 1404 allows the Court to exercise its discretion in ruling on a motion to transfer based on an individual, cases-by-case basis. Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29, 108 S. Ct. 2239, 2244 (1988); see also Brock v. Entre Computer Ctrs., Inc., 933 F.2d 1253, 1257 (4th Cir. 1991). In exercising their discretion in determining whether to transfer a case, courts in this district consider, in addition to other factors that may be specific to the individual case, eleven factors. See Jim Crockett Promotions, Inc. v. Action Media Grp., Inc., 751 F. Supp. 93, 96 (W.D.N.C. 1990) (Potter, C.J.); Andritz Hydro Corp. v. PPL Montana, LLC., No. 3:13-cv-412-RJC-DSC, 2014 WL 868750 (W.D.N.C. Mar. 5, 2014) (Conrad, J.). These eleven factors include:

---

the Court would have *sua sponte* struck the pleading from the record and would not have considered it in ruling on the Motion to Transfer. Accordingly, the Court need not wait until the response period has run to grant Plaintiff's motion.

> (1) plaintiff's initial choice of the forum; (2) the relative ease of access to sources of proof; (3) availability of compulsory process for attendance of unwilling, and the costs of obtaining attendance of willing, witnesses; (4) possibility of view of premises, if view would be appropriate to the action; (5) enforceability of a judgment if one is obtained; (6) relative advantages and obstacles to a fair trial; (7) all other practical problems that make a trial easy, expeditious, and inexpensive; (8) administrative difficulties of court congestion; (9) local interests in having localized controversies settled at home; (10) the appropriateness in having the trial of a diversity case in a forum that is at home with the state law that must govern the action; and (11) avoidance of unnecessary problems with conflict of laws.

Datasouth Computer Corp. v. Three Dimensional Techs., Inc., 719 F. Supp. 446, 450-51 (W.D.N.C. 1989) (Potter, C.J.); see also Action Media, 751 F. Supp. at 96; Duke Energy Fla., Inc. v. Westinghouse Elec. Co., No. 3:14-cv-00141-MOC-DSC, 2014 WL 2572960 (W.D.N.C. Jun. 9, 2014) (Cogburn, J.) "When weighing these factors, the court must keep in mind that a party seeking transfer pursuant to Section 1404(a) has the burden of persuasion and must show (1) more than a bare balance of convenience in his favor and (2) that a transfer does more than merely shift the inconvenience." Datasouth, 719 F. Supp. at 451 (internal quotations and citation omitted).

As a threshold mater, Plaintiff does not dispute that this case could have originally been brought in the United States District Court for the Eastern District of North Carolina. Rather, Plaintiff contends that Defendant has not met its burden

of demonstrating that the circumstances of this case warrant its transfer. In considering the eleven enumerated factors, as well as taking the individual circumstances of this case into consideration, the Court finds that the transfer of this case is not warranted.

Generally, Courts give considerable weight to a plaintiff's initial choice of forum. Action Media, 751 F. Supp. at 96. "[A] plaintiff's choice of forum is entitled to somewhat less weigh when the case is removed to federal court because the plaintiff is no longer in his or her chosen forum, which was state court." Sky Techs. Partners, LLC v. Midwest Research Inst., 125 F. Supp. 2d 286, 292 (S.D. Ohio 2000); see also Mayberry v. Nuclear Fuel Servs., Inc., No. 3:13-cv-499, 2013 WL 5560318, at *4 (E.D. Tenn. Oct. 7, 2013) ("[A] plaintiff's choice of forum is entitled to less deference when the case has been removed to federal court because the plaintiff's chosen forum was state court."); Diversified Metal Distribs., LLC v. AK Steel Corp., Civil Action No. 6-55-KKC, 2007 WL 403870, at *4 (E.D. Ky. Feb. 1, 2007). Here, Plaintiff's choice of forum was the Superior Court of Macon County, not this Court. The Court, therefore, gives less weight to Plaintiff's choice of forum than if Plaintiff had initially brought this suit in this Court, but still finds the fact that Plaintiff brought this suit in a state court within the jurisdiction of this district warrants granting some weight to Plaintiff's choice of forum.

The residence of the parties also weighs against transfer. Plaintiff's principal place of business is located in the Western District. Defendant is a foreign company with its principal place of business in Connecticut. While Plaintiff may have offices in the Eastern District, the fact that its principal place of business is located in this district weighs against transferring this case because most of the documents and witnesses in this case appear to be located in this district. Moreover, the subject of the contract at issue – the utility poles – are located in this district. In fact, there appears to be little in the way of evidence or witnesses located in the Eastern District, and Defendant has not demonstrated that the Eastern District would be more convenient to the witnesses than this district.[3]

The primary reason that Defendant moves to transfer this case is the presence of two similar cases in the Eastern District. One of these cases involves a breach of contract action brought by one of Plaintiff's affiliate corporations against Defendant based on joint use agreements for utility poles located in a different regions of North Carolina. The other case involves a declaratory judgment action brought by Defendant against Plaintiff that addresses other joint use agreements. Although, the issue in all these disputes is the rate charged for using Plaintiff's utility poles, the joint use agreements at issue in all these disputes are distinct

---

3   Most of the eleven factors are either neutral or are not pertinent to this dispute. Accordingly, the Court has only discussed those enumerated factors that are relevant to determining whether transfer is warranted in this case.

contracts and, barring action by the FCC, the courts will likely only be required to interpret the express language of the various contracts.

Defendant contends that because each of these cases involve the central issue of whether the litigation should be stayed under the doctrine of primary jurisdiction, that this dispute is sufficiently related to the other two cases to warrant transferring it to the Eastern District. This Court, however, is just as capable of making this determination as the Eastern District, and the fact that all three cases involve a similar legal issue is insufficient to warrant transferring this case. In short, the Court finds that the breach of contract action before the Court is not sufficiently related to the two cases pending in the Eastern District to warrant further burdening the Eastern District with another breach of contract case, especially in light of the fact that none of the enumerated factors considered by this Court strongly warrant transferring this case. Accordingly, the Court finds that the facts and circumstances of this case do not justify transferring the case, and Defendant has failed to satisfy its burden of demonstrating that transfer of this case to the Eastern District is warranted. The Court, therefore, **DENIES** the motion to the extent it moves to transfer this case to the United States District Court for the Eastern District of North Carolina.

### B. Motion to Stay

In the alternative, Defendant moves to stay this case. Specifically, Defendant contends that the doctrine of primary jurisdiction should apply in this case. As the United States Supreme Court has explained, the primary jurisdiction doctrine:

> is a doctrine specifically applicable to claims properly cognizable in court that contain some issue within the special competence of an administrative agency. It requires the court to enable a "referral" to the agency, staying further proceedings so as to give the parties reasonable opportunity to seek an administrative ruling.

Reiter v. Cooper, 507 U.S. 258, 265, 113 S. Ct. 1993, 1218 (1993). "Generally speaking, the doctrine is designed to coordinate administrative and judicial decision-making by taking advantage of agency expertise and referring issues of fact not within the conventional experience of judges or cases which require the exercise of administrative discretion." Environmental Tech. Council v. Sierra Club, 98 F.3d 774, 789 (4th Cir. 1996); see also Union Elec. Co., v. Cable One, Inc., No. 4:11-CV-299, 2011 WL 4478923 (E.D. Mo. Sep. 27, 2011) (discussing the primary jurisdiction in the context of the FCC and its issuance of new regulations regarding the reasonable rate for pole attachments in the telecommunications industry). Once a court determines that the primary jurisdiction doctrine applies and refers an issue to the appropriate entity, it may

either retain jurisdiction and stay the case or dismiss the case without prejudice if none of the parties will be disadvantaged.  Reiter, 507 U.S. at 265.

The Court, however, need not decide the issue of whether primary jurisdiction is applicable to any issues in this case because referral of the issue of whether the rates set by Plaintiff for 2012 and 2013 is already before the FCC.  Defendant filed a complaint with the FCC after Plaintiff brought this action in which it contends that the rate charged by Plaintiff pursuant to the terms of the Joint Use Agreement is unreasonable.   Thus, these issues are already before the FCC, and there is no need for the Court to refer them to the FCC.

As the United States Supreme Court has explained, "the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants."  Landis v. North American Co., 299 U.S. 248, 254-55, 57 S. Ct. 163, 166 (1936).  "The determination by a district judge in granting or denying a motion to stay proceedings calls for an exercise of judgment to balance the various factors relevant to the expeditious and comprehensive disposition of the causes of action on the court's docket."  United States v. Georgia Pacific Corp., 562 F.2d 294, 296 (4th Cir. 1977); see also Maryland v. Universal Elections, Inc., 729 F.3d 370, 375 (4th Cir. 2013).  Despite determining that the Court need not

determine the applicability of the primary jurisdiction doctrine to this dispute, the Court does find that a stay of these proceedings is warranted. It would be a waste of judicial resources for this Court to proceed with this case while Defendant's complaint is pending with the FCC. Accordingly, the Court exercises its discretion and **STAYS** this case pending a ruling by the FCC on Defendant's Complaint, a resolution of the issue by the parties, or further Order of the Court. This stay will not severely prejudice Plaintiff or its breach of contract claims and will ultimately allow this Court to resolve this dispute without the cloud of the FCC complaint hanging over this case.

### III. Conclusion

The Court **GRANTS** The Motion to Strike [# 39] and **STRIKES** the Supplemental Memorandum [# 37]. The Court **GRANTS in part** and **DENIES in part** the motion [# 23]. The Court **DENIES** the motion to the extent it seeks to transfer this case. The Court **GRANTS** this motion to the extend it seeks a stay of these proceedings. The Court **STAYS** these proceedings pending further Order of the Court. Either party may move to lift the stay upon either a final determination by the FCC on Defendant's complaint or the parties reach an agreement to resolve this dispute.

Signed: August 6, 2014

*Dennis L. Howell*

Dennis L. Howell
United States Magistrate Judge